```
        IN THE UNITED STATES DISTRICT COURT
      FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
```

UNITED STATES OF AMERICA    )
                            )
v.                          )         1:19CR508-1
                            )
DESMOND JAMAR FLAKE         )

### MEMORANDUM ORDER

This case is before the court on pro se Defendant Desmond Jamar Flake, Jr.'s motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). (Doc. 45.) The Government has responded in opposition. (Doc. 48.) For the reasons stated herein, Flake's motion will be denied.

I.  BACKGROUND

On September 30, 2019, Flake was indicted on a single count of possession with intent to distribute 28 grams or more of a mixture and substance containing a detectable amount of cocaine base, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B). (Doc. 1.) He was sentenced to 150 months' imprisonment followed by 5 years' supervised release. (Doc. 28.) His motion to vacate, set aside or correct judgment has been denied. (Doc. 44.) Flake is currently incarcerated at FCI Williamsburg and has an expected release date of February 17, 2030, based on good conduct. See Bureau of Prison ("BOP") Inmate Locator, https://www.bop.gov/inmateloc/ (last visited Dec. 1, 2025).

## II. ANALYSIS

"Federal law has long authorized courts to reduce the sentences of federal prisoners facing extraordinary health conditions," but prior to the passage of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, district courts could grant such reductions only upon a motion by the Director of the BOP pursuant to 18 U.S.C. § 3852(c)(1). United States v. Beck, 425 F. Supp. 3d 573, 577-78 (M.D.N.C. 2019). However, Congress amended § 3852(c)(1) when it passed the First Step Act. Pertinent here, the First Step Act added a provision to § 3852(c)(1) that allows a defendant to bring a motion for compassionate release directly in a district court after either "the defendant has fully exhausted all administrative right to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

Once the exhaustion requirement is met, a defendant must either (1) have "extraordinary and compelling reasons" for a compassionate release or (2) be at least seventy years old, have served at least thirty years in prison, and have the Director of the BOP determine that the defendant is not a danger to the public. Id. The defendant bears the burden of establishing that extraordinary and compelling reasons justify his release. See

2

United States v. Newton, 996 F.3d 485, 488 (7th Cir. 2021); see also United States v. Hargrove, 30 F.4th 189, 195 (4th Cir. 2022). Further, while a court need not address every argument raised by a defendant, it must fully explain its decision in light of the particular circumstances of each case. United States v. Osman, No. 21-7150, 2022 WL 485183, at *2 (4th Cir. Feb. 17, 2022) (per curiam) (unpublished) (citing United States v. High, 997 F.3d 181, 188-89 (4th Cir. 2021)). Additionally, a court, in considering a reduction in sentence pursuant to § 3582(c)(1)(A), must consult the sentence factors set forth in 18 U.S.C. § 3553(a) and may grant the reduction only if it is "consistent with [the] applicable policy statements" issued by the United States Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A). "[E]ven if a movant satisfies the threshold eligibility requirement for obtaining relief, a district court has discretion to grant or deny relief based on its assessment of the salient § 3553(a) factors." United States v. Bethea, 54 F.4th 826, 831 (4th Cir. 2022).

As amended, United States Sentencing Guideline § 1B1.13(a) essentially reiterates the requirements of § 3582(c)(1)(A), with the additional requirement that a defendant not be "a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(a)(2); see also Beck, 425 F. Supp. 3d at 578. Section 1B1.13(b) then provides a non-exhaustive list of examples of extraordinary and compelling reasons to grant a compassionate

3

release.  The four enumerated reasons are (1) the medical circumstances of the defendant; (2) the age of the defendant; (3) the family circumstances of the defendant; and (4) the defendant is a victim of abuse.  U.S.S.G. § 1B1.13(b).  Section 1B1.13(b)(5) then provides a catch-all provision for "any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4)."  Section 1B1.13(b)(6) also provides that a court may consider a change in the law when determining whether the defendant presents an extraordinary and compelling reason, if the "defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment," and if the change in the law "would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time of the motion is filed, and after full consideration of the defendant's individualized circumstances."  Finally, § 1B1.13(d) states that rehabilitation of the defendant is not alone an extraordinary and compelling reason, but it may be considered along with other circumstances.

Courts maintain broad discretion in the evidence they may consider on a motion to reduce a sentence under the First Step Act.  Concepcion v. United States, 597 U.S. 481, 498-502 (2022).  However, they do not have unfettered jurisdiction or discretion to

4

modify criminal sentences. See United States v. Goodwyn, 596 F.3d 233, 235 (4th Cir. 2010) ("The law closely guards the finality of criminal sentences against judicial 'change of heart.'" (quoting United States v. Layman, 116 F.3d 105, 109 (4th Cir. 1997))). A court may modify a sentence only when a provision in the Federal Rules of Criminal Procedure or a statute, such as 18 U.S.C. § 3582(c), expressly permits it do so. Even then, § 3582(c) is appropriately invoked only in unusual cases, or, as the Fourth Circuit has stated, the "most grievous cases." United States v. McCoy, 981 F.3d 271, 287 (4th Cir. 2020); see United States v. Osman, No. 23-6544, 2024 WL 3633573, at *3 (4th Cir. Aug. 2, 2024) (unpublished) (stating that compassionate release is "a narrow means for a district court to modify a term of imprisonment that has already been imposed, an act which the courts are generally barred from undertaking").[1] It is not a vehicle for repeated reconsideration of sentences as a way to circumvent the general rule of finality. See Goodwyn, 596 F.3d at 235-36. Nor is it a vehicle to collaterally attack a federal conviction or sentence. United States v. Ferguson, 55 F.4th 262, 270 (4th Cir. 2022).

Here, Flake contends he has exhausted his administrative remedies within the BOP (Doc. 45 at 3), and the Government does

---

[1] Unpublished opinions of the Fourth Circuit are not precedential but are cited for their persuasive, but not controlling, authority. See Collins v. Pond Creek Mining Co., 468 F.3d 213, 219 (4th Cir. 2006).

5

not contest that (Doc. 48 at 5).  Thus, the court turns to the merits of his motion.

## A. Extraordinary and Compelling Reasons

Flake raises several contentions as to why he should be granted compassionate release:  (1) if he were sentenced today, he would not be a career offender; (2) he was immature at the time of the offense; (3) since incarceration, he has lost his mother and grandmother; (4) he is the sole caregiver for his children; and (5) he has performed in exemplary fashion while incarcerated. (Doc. 45 at 13-14.)  The Government opposes each ground.  The court addresses them in turn.

### 1. "Unusually Long" Sentence

First, Flake argues that he no longer qualifies as a career offender, thus indicating that his sentence reflects an unusual disparity with what would be meted out today.  The guidelines, as noted, do provide a basis to attack an "unusually long" sentence if it results in a disparity.  However, a defendant must serve a minimum of 10 years of his sentence before he may assert this ground.  U.S.S.G. § 1B1.13(b)(6).  By his own admission (Doc. 45 at 2), Flake has not done so.

### 2. Immaturity

Second, Flake cites his immaturity, noting that "[c]ase law supports the principle that individuals who commit crimes prior to the age of 25 may not possess the maturity or understanding

6

necessary to be fully accountable for their actions." (Id. at 13 (citing Miller v. Alabama, 567 U.S. 460 (2012)).) However, he was a mature adult, shy of 34 years old, when he committed this offense. (Doc. 17 at 2-3.) This ground is therefore unpersuasive as a basis for relief.

### 3. Family Circumstances

Third, Flake argues that since he has been incarcerated, his mother and grandmother have died. Unfortunately, the loss of older family members while incarcerated is a natural byproduct of being incarcerated as a result of one's decision to commit crimes. However, it is not extraordinary and compelling.

In addition, Flake argues that he is the sole caregiver for his children. An extraordinary and compelling reason for compassionate release may be shown where the caregiver of a defendant's minor child dies or becomes incapacitated. U.S.S.G. § 1B1.13(b)(3)(A). Amended Sentencing Guideline § 1B1.13(b)(3)(A), which details the death or incapacitation of the caregiver of the defendant's minor child, does not specify that "the defendant would be the only available caregiver" for the family member, unlike other subsections.[2] Cf. U.S.S.G.

---

[2] Before the amendment, the guideline's commentary provided that an extraordinary and compelling reason existed in the event of "[t]he death or incapacitation of the defendant's only family member capable of caring for the defendant's minor child or children." U.S.S.G. § 1B1.13 cmt. n.1(A)(iii) (2015). In 2016, the guideline was amended to include a "Family Circumstances" category. See Sentencing Guidelines for United States Courts, 81 Fed. Reg. 27262, 27264 (May 5, 2016). The amendment

7

§ 1B1.13(b)(3)(B)-(D). Some courts have applied the guideline without requiring more. See, e.g., United States v. Cunningham, No. ELH-18-017, 2024 WL 4057004, at *8 (D. Md. 2024) (observing that "the plain language of the current Guidelines does not require a defendant to demonstrate that there are no other available caregivers for a minor child"); United States v. Lanphear, CR 19-19, 2024 WL 97369, at *2 (D. Mont. 2024) (finding that "there is no requirement that the defendant be the child's only available caregiver"); United States v. Smith, No. 21-cr-00279, 2024 WL 4556521, at *4 (D. Nev. Oct. 22, 2024) (noting that the court "cannot import a requirement that the Sentencing Commission failed to include"). The guidelines are advisory, however, and this court, like others, has generally considered whether no other caregiver is available. See, e.g., United States v. Cates, No. 20-CR-223, 2023 WL 167409, at *3-4 (M.D.N.C. Jan. 12, 2023) (finding no extraordinary and compelling reasons existed because the defendant failed to show no other suitable caregiver for his minor children or that he would himself be a suitable caregiver given his history of assaults and the offense conduct involving drug sales from a residence where he lived with his fiancée and small children); United States v. Barlow, No. 19-cr-00024-4, 2023

---

"delete[d] the requirement under prong (i) regarding the death or incapacitation of the 'defendant's only family member' caregiver, given the possibility that the existing caregiver may not be of family relation." (Id.)

WL 2755598, at *3 (W.D. Va. Mar. 31, 2023) (finding defendant failed to demonstrate that she is the sole available caregiver for her minor child); United States v. Waldron, No. 17-CR-00116, 2023 WL 4306910, at *3 (S.D. W. Va. June 30, 2023) (finding failure to provide sufficient evidence that caregivers were unable to care for child); United States v. Whitted, No. 15-CR-00372, 2025 WL 1944018, at *7 (E.D.N.C. July 15, 2025) (noting in dicta that courts have found compassionate release based on incapacitation of the caregiver of a defendant's minor child inappropriate when there may be relative caregivers available to take custody).

Here, in a three-sentence section of his motion, Flake argues that he is the "sole caregiver for his children," that the "absence of their father has adversely affected their well-being," and that his return "would provide the stability and support they need." (Doc. 45 at 13.) He says he is a "dedicated parent" who "aims to be present in their lives and provide the guidance and support for their growth." (Id.) However, as the Government points out, he does not provide any factual support for this claim. Moreover, according to Flake's February 27, 2020 presentence report, all three of these children were living with their mother, Ms. Carr. (Doc. 17 ¶ 75.) Flake no longer resided with her because he subsequently started (and apparently ended) a new relationship with another woman with whom he has had another child. (Id. ¶¶ 75-76.) Thus, the last factual information the court has

9

explains that Flake's children still reside with Ms. Carr.  Flake has not provided any factual information to indicate that Ms. Carr, who has been their custodian, is no longer capable of caring for them while he is incarcerated.  The court finds this contention, therefore, far from a robust showing that would constitute an extraordinary and compelling reason.

### 4.  Rehabilitation

Finally, Flake argues that his conduct while incarcerated has been "exemplary, evidenced by successful completion of educational and rehabilitation programs."  (Doc. 45 at 14.)  It is true that efforts at rehabilitation, while not alone an extraordinary and compelling reason, can be considered along with other circumstances in assessing whether compassionate release is warranted.  U.S.S.G. § 1B1.13(d).

Flake has only one infraction for failing to stand count during Covid, and he has completed various programs, including the 500-hour Challenge Program.  (Doc. 48-2 at 4; Doc. 48-4.)  These efforts are commendable, but they do not, alone or in combination with any of the other factors he has argued, rise to the level of extraordinary and compelling circumstances.  Indeed, rehabilitation is one of the goals of sentencing for all inmates. United States v. Vaughn, 62 F.4th 1071, 1072 (7th Cir. 2023) (noting that taking classes while incarcerated is "common rather than extraordinary").  Flake's good conduct is expected and is

10

rewarded with good conduct time, and his educational efforts are encouraged and expected among inmates.

In sum, the contentions offered by Flake, alone and considered collectively, do not constitute extraordinary and compelling circumstances to warrant compassionate release.

**B. Section 3553(a) Factors**

Even had Flake offered an extraordinary and compelling reason, compassionate release is not warranted because the § 3553(a) factors do not weigh in his favor. Section 3553(a) requires a court to impose a sentence that is "sufficient, but not greater than necessary" to comply with the statutory purposes of sentencing. 18 U.S.C. § 3553(a). Importantly, the "text of § 3553(a) does not make any factor, or combination of factors, dispositive." United States v. Kibble, 992 F.3d 326, 334-35 (4th Cir. 2021) (Gregory, C.J., concurring). Thus, the court must consider:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant;

(2) The need for the sentence imposed:

   (A) To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

   (B) To afford adequate deterrence to criminal conduct;

   (C) To protect the public from further crimes of the

11

defendant;

    (D) To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) The kinds of sentences available;

(4) The kinds of sentence[s] and the sentencing range established for [the applicable offense category as set forth in the guidelines] . . . ;

(5) Any pertinent policy statement . . . by the Sentencing Commission . . . ;

(6) The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) The need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

    Having considered the § 3553(a) factors, the court concludes that granting Flake's motion for compassionate release would fail to adequately account for the seriousness of his conviction, and the need for deterrence, just punishment, and protection of the community.

    Flake's extensive criminal record started at age 16. At age 17, he was convicted of two counts of felony robbery with a
12

dangerous weapon, which involved a handgun, and sentenced to 61 to 83 months of imprisonment. (Doc. 17 at 8.) At age 26, he was charged with, and later convicted of, felony possession with intent to sell and deliver cocaine and sentenced to 10 to 12 months' imprisonment, upon revocation. (Id.) Then he was convicted of possession and possession with intent to traffic cocaine and sentenced to 11 to 23 months, suspended; he violated his probationary sentence and was jailed for three months. (Id. at 13.) He also has multiple misdemeanor convictions for a multitude of offenses, including one for attacking a woman by hitting her in the head with a metal pan. (Id. at 14.) Though no longer considered a career offender, his extensive criminal history rendered him a criminal history category VI by virtue of his criminal history points. (Id. at 17.) In light of his committing the current offense after having committed these prior crimes, it is apparent that he has not been deterred and that the community needs to be protected.

Given Flake's conduct, the circumstances surrounding his conviction, and his criminal history, the court is unconvinced that compassionate release is warranted under § 3553(a).

   C.  **Appointment of Counsel**

Finally, Flake seeks the appointment of counsel to pursue his motion. (Doc. 45 at 6.) There is no general constitutional right to appointed counsel in post-conviction proceedings, see United

13

States v. Williamson, 706 F.3d 405, 416 (4th Cir. 2013), although the court retains discretion to appoint counsel in § 3582(c) proceedings if the interests of justice so require. Based on the court's review of the filings and Flake's circumstances, he has not demonstrated that he is incapable of seeking his requested relief without the appointment of counsel, and he has not otherwise demonstrated that appointment of counsel is necessary here. As such, his request for appointment of counsel will be denied.

### III. CONCLUSION

For the reasons stated,

IT IS ORDERED that Flake's motion for compassionate release and appointment of counsel (Doc. 45) is DENIED.

/s/ Thomas D. Schroeder
United States District Judge

December 5, 2025

14

Case 1:19-cr-00508-TDS    Document 50    Filed 12/05/25    Page 14 of 14